**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN THE MATTER OF:<br>United Telehealth Corporation, et al.,<br>                    Debtor.<br>Yalda Fallahi, et al.,<br>                    Appellants,<br>v.<br>James E. Cross,<br>                    Appellee. | No. CV-24-01992-PHX-GMS<br>BK NO. 2:22-bk-02385-EPB<br>ADV NO. 2:22-ap-00260-EPB<br><br>**ORDER** |

      Pending before the Court is an appeal challenging a $3.65 million judgment entered by the United States Bankruptcy Court for the District of Arizona (the "Bankruptcy Court"). For the following reasons, the Bankruptcy Court's decision is affirmed.

## BACKGROUND

      Appellants Nima Ghadimi and Yalda Fallahi (collectively, "Appellants" or "Defendants") challenge the Bankruptcy Court's determination that Nima Ghadimi, as manager of Scottsdale Physicians Group, PLC ("SPG"), breached his fiduciary duty to SPG by transferring $3.65 million in SPG funds into his personal trading account. The Bankruptcy Court entered a final judgment of $3.65 million against Ghadimi, individually, and against the marital community of Ghadimi and his wife, Yalda Fallahi.

      SPG was initially formed as an Arizona limited liability company ("LLC") on

October 30, 2003, by Ghadimi and one other member. (Doc. 7-3 at 2). Ghadimi, a physician, later became the sole member of SPG on November 1, 2007. (*Id.*). On December 2, 2009, Ghadimi converted SPG from a member-managed LLC to a manager-managed professional limited liability company ("PLLC"). (*Id.*). He executed an initial operating agreement for SPG on February 23, 2011. (*Id.*).

On December 11, 2013, Ghadimi fully transferred his membership interest in SPG to the Monterey Trust and executed an amended and restated operating agreement (the "Operating Agreement"). (Doc. 5 at 8-9). The Operating Agreement identifies Ghadimi as the sole manager of SPG and as a trustee of the Monterey Trust. (Doc. 7-3 at 5). The Monterey Trust is the sole member of SPG, and the Ghadimi family is the sole beneficiary of the Monterey Trust. (Doc. 5 at 9). Ghadimi concedes that, for the purposes of this dispute, he qualifies as the manager of SPG. (*Id.*).[1]

SPG operated as a hospitalist organization, providing hospitals with licensed physicians who operated as independent contractors to furnish medical services to admitted patients. (Doc. 5 at 10-11). In early 2020, SPG entered into an agreement with HonorHealth, a nonprofit healthcare system in Arizona, to provide exclusive hospitalist services to an HonorHealth facility in Scottsdale, Arizona. (*Id.* at 11). To honor this contract, SPG hired new administrative staff, enlisted additional physicians, and increased its lines of credit from financial institutions. (*Id.*). In April 2020, as hospitals focused on providing essential services and restricted elective treatments in response to the Covid-19 pandemic, SPG began to struggle to pay its existing obligations to staff and contractors. (*Id.*). In response, SPG obtained governmental assistance through the federal Paycheck Protection Program, which offered forgivable loans to small businesses to help meet payroll costs during the pandemic. (*Id.* at 12). Such assistance had limited effect, however, because the bulk of SPG's physicians were independent contractors. (*Id.*).

Still struggling to meet SPG's existing obligations in the first quarter of 2021 and unable to obtain credit from traditional financial institutions, Ghadimi turned to a merchant

---

[1] Appellants also previously conceded that Ghadimi was in control of SPG at all times relevant to this dispute. (Doc. 5-2 at 2 n.2).

- 2 -

cash advance ("MCA")[2] to secure additional funding. (*Id.*). As expenses continued to add up across SPG and two other of Ghadimi's companies, SPG Hospice LLC ("Hospice") and United Telehealth Corporation ("UTC"),[3] Ghadimi kept taking additional loans from MCA lenders. (*Id.* at 13). By December 2021, Ghadimi's companies had accumulated between four to five million dollars in MCA loans. (*Id.*).

Faced with the prospect of having to pay triple-digit interest rates on the MCA loans, Ghadimi withdrew $3.65 million in SPG funds and deposited them in his personal Ameritrade investment account. (*Id.* at 6, 13).[4] By Appellants' admission, "Ghadimi resorted to investing in the stock market to raise funds without the accruing interest." (*Id.* at 13). Ghadimi and his advisors later confirmed that $3.65 million in SPG funds had been used "to attempt to cover the high interest, short term, MCA loans." (*Id.*). This amount was also confirmed through a promissory note signed by Ghadimi, on behalf of the Monterey Trust, on October 1, 2021. (*See* Doc. 7-1). The promissory note stated that the Monterey Trust would pay SPG the sum of $3.65 million, "with no interest," on "any future date on which [SPG] demands repayment." (*Id.* at 2). The note was not secured with any collateral, and Ghadimi was not personally obligated to repay the debt. (*See id.* at 2-3).

Ghadimi never returned the $3.65 million to SPG, nor did the Monterey Trust ever pay back SPG under the promissory note. (Doc. 6 at 4; Doc. 5 at 14). Ghadimi attempted to procure the funds necessary to cover the MCA loans by selling SPG and Hospice to

---

[2] MCAs "are a type of financing best for small businesses that need capital immediately to cover cash-flow shortages or short-term expenses. This type of financing can be very expensive, carrying annual percentage rates in the triple digits and potentially creating a difficult cycle of debt." Randa Kriss, *Is a Merchant Cash Advance Right for Your Business?*, NerdWallet (Apr. 30, 2025), https://www.nerdwallet.com/article/small-business/merchant-cash-advance.

[3] Appellants admit that Ghadimi managed these two entities as well. (Doc. 5 at 8-9 n.3).

[4] At oral argument, Ghadimi raised multiple new, irrelevant factual issues that are not in the record before the Bankruptcy Court or this Court. For example, Ghadimi pointed to the existence of a promissory note, signed in May 2017, that purportedly indicated that SPG owed Ghadimi over $6.5 million. The Court will not consider such facts at summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A) (parties contesting summary judgment may "cit[e] to particular parts of materials *in the record*" (emphasis added)); *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116 (9th Cir. 1994) ("In reviewing an order granting summary judgment, [the Court is] limited to the facts . . . available to the court at the time the motion was made." (citation omitted)).

prospective buyers, but such efforts were unsuccessful. (Doc. 5 at 14). SPG ultimately defaulted on its payroll obligations, which necessitated additional loans. (Doc. 5-2 at 2). On April 19, 2022, SPG, Hospice, and UTC all entered Chapter 11 bankruptcy proceedings. (*Id.*).

James E. Cross ("Appellee" or "Plaintiff") was appointed as the Chapter 11 Trustee for SPG, Hospice, and UTC (collectively, the "Debtors"). On November 7, 2022, Cross brought an adversary proceeding on behalf of the Debtors against Ghadimi and Fallahi.[5] The complaint was later amended to include the Monterey Trust as a defendant on December 6, 2022. Plaintiff, on behalf of the Debtors, brought five claims: (1) avoidable fraudulent transfers against Appellants, (2) avoidable post-petition transfers against Appellants (3) breach of contract for failure to repay the $3.65 million promissory note against the Monterey Trust, (4) breach of fiduciary duty for withdrawing funds from the Debtors for personal benefit against Appellants, and (5) avoidable preferences against Appellants.

Plaintiff moved for partial summary judgment on the breach of contract claim against the Monterey Trust, which was unopposed. (Doc. 5 at 7). The Bankruptcy Court entered final judgment on the claim on February 22, 2023. (*Id.*). The Monterey Trust is not a party to this appeal, nor do Appellants challenge the Bankruptcy Court's final judgment on the breach of contract claim. (*Id.* at 4, 13-14 n.5).

Both Plaintiff and Defendants moved for partial summary judgment on the breach

---

[5] Appellants conceded that all actions taken by Ghadimi were taken on behalf of and for the benefit of the marital community between Ghadimi and Fallahi. (Doc. 5-2 at 2 n. 1). At oral argument, however, Fallahi asked the Court to dismiss her as a party to the adversary proceeding, claiming that she had no role in the operations of Ghadimi's businesses.

"Arizona law presumes that debts incurred during marriage are community debts unless clear and convincing evidence shows one spouse did not intend to benefit the community when he or she incurred the debt." *Pravati SPV II LLC v. Randolph*, No. 1 CA-CV 22-0340, 2023 WL 4504180, at *3 (Ariz. Ct. App. July 13, 2023) (citing *Cardinal & Stachel, P.C. v. Curtiss*, 225 Ariz. 381, 383-84, 238 P.3d 649, 651-52 (Ct. App. 2010)). Because Appellants previously conceded that Ghadimi's actions were done for the benefit of the marital community, the debts incurred here by Ghadimi are community debts, and Fallahi is thus a proper party to this action. *See also* A.R.S. § 25-215(D) (stating that "spouses shall be sued jointly" in an action on debt contracted by "either spouse . . . for the benefit of the community").

of fiduciary duty claim. On October 16, 2023, the Bankruptcy Court simultaneously denied Defendants' motion and granted Plaintiff's motion and entered judgment in the amount of $3.65 million, reflecting the portion Ghadimi transferred from SPG to his personal Ameritrade account. (Doc. 5-2 at 2-6). The Bankruptcy Court's reasoning was three-fold: (1) under Arizona law, a manager of an LLC presumptively owes a fiduciary duty to the LLC, (2) SPG's Operating Agreement did not eliminate or otherwise limit the presumptive application of the fiduciary duty to the conduct at issue, and (3) the transfer of SPG funds to Ghadimi's personal trading account constituted a personal benefit for Ghadimi that provided "no meaningful benefit" for SPG. (*Id.* at 3-6).

On July 12, 2024, the Bankruptcy Court dismissed the three remaining claims with prejudice, based on the parties' stipulation, and entered final judgment on the breach of fiduciary duty claim against Appellants. (Doc. 5-3). Appellants timely filed their notice of appeal with the Bankruptcy Court on July 25, 2024. (Doc. 1 at 1).

On appeal, Appellants raise three issues. First, Appellants contend that, as a matter of law, Ghadimi did not owe a fiduciary duty to SPG. (Doc. 5 at 4-5). Second, Appellants argue that the Bankruptcy Court erred in finding that Ghadimi breached his fiduciary duty to SPG because Ghadimi acted in good faith. (*Id.* at 5). And third, Appellants assert, in the alternative, that genuine issues of material fact remain regarding whether Ghadimi "acted in good faith" that preclude the grant of summary judgment. (*Id.* at 5-6).[6]

## LEGAL STANDARD

Under 28 U.S.C. § 158(a)(1), the Court has jurisdiction over appeals from "final judgments, orders, and decrees" of the Bankruptcy Court. When reviewing the Bankruptcy Court's grant of summary judgment, the Court "must view the evidence in the light most favorable to the non-moving party and determine whether there are any genuine issues of material fact and whether the bankruptcy court correctly applied the substantive law."

---

[6] Appellants initially present this as two separate issues in their opening brief—that there are genuine issues of material fact regarding (1) whether Ghadimi acted in good faith and (2) the "purpose and intent" of Ghadimi's transfer of funds. (Doc. 5 at 5-6). Because Appellants analyze these two issues simultaneously and proffer arguments for them under one subheading (*id.* at 19-21), the Court will analyze the issues together.

- 5 -

*Gladstone v. U.S. Bancorp*, 811 F.3d 1133, 1138 (9th Cir. 2016) (internal quotation marks and citations omitted).

The Court reviews a Bankruptcy Court's conclusions of law de novo and its findings of fact under the clearly erroneous standard. *United States v. MacKenzie* (*In re Leite*), 112 F.4th 1246, 1250 (9th Cir. 2024); *Decker v. Tramiel* (*In re JTS Corp.*), 617 F.3d 1102, 1109 (9th Cir. 2010). The clearly erroneous standard requires the Court to accept the Bankruptcy Court's findings of facts "unless [those] findings leave the definite and firm conviction that a mistake has been committed by the bankruptcy judge." *Khan v. Barton* (*In re Khan*), 846 F.3d 1058, 1063 (9th Cir. 2017) (alteration in original) (citation omitted).

Interpretation of an operating agreement, when no extrinsic evidence is introduced, is a question of law, reviewed de novo. *Welles v. Turner Ent. Co.*, 503 F.3d 728, 738 (9th Cir. 2007); *SSRE Holdings, LLC v. Zirkle Grp., LLC* (*In re SSRE Holdings, LLC*), No. CC-21-1027-SGF, 2021 WL 3829303, at *3 (B.A.P. 9th Cir. Aug. 26, 2021). A lower court's construction of state law is reviewed de novo. *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 663 (9th Cir. 2003). Finally, while "[t]he existence of a fiduciary duty is a question of law," *Maxfield v. Martin*, 217 Ariz. 312, 314, 173 P.3d 476, 478 (Ct. App. 2007), determination of whether there was a breach of fiduciary duty is a question of fact, reviewed for clear error. *David N. Chandler, P.C. v. McIntosh* (*In re McIntosh*), 697 F. App'x 569, 572 (9th Cir. 2017); *Herbal Care Sys., Inc. v. Plaza*, No. CV-06-2698-PHX-ROS, 2009 WL 692338, at *6 (D. Ariz. Mar. 17, 2009).

## DISCUSSION

**A.  Ghadimi Owed Fiduciary Duties to SPG.**

Appellants first contend that Ghadimi did not owe fiduciary duties to SPG because the Operating Agreement limited Ghadimi's liability. (Doc. 5 at 16-18). Appellants' argument fails. Under the Operating Agreement, Ghadimi can only avoid liability if the "act performed or omission made [was] in good faith under any authority granted in this Agreement." (Doc. 7-3 ¶ 6.5). Because Ghadimi's conduct was not pursuant to any authority granted in the Operating Agreement, the limitations-on-liability provision does

not apply here.

### 1. Arizona Law Imposes Presumptive Fiduciary Duties on LLC Managers.

Appellants admit that under Arizona law, Ghadimi presumptively owed fiduciary duties to SPG (Doc. 5 at 15), but mistake the source—and therefore, the extent—of these duties.

Arizona enacted its first limited liability company act (the "LLC Act"), previously codified at A.R.S. § 29-601 *et seq.*, in 1992. *In re Sky Harbor Hotel Props., LLC*, 246 Ariz. 531, 532, 443 P.3d 21, 22 (2019). The Arizona Supreme Court interpreted the LLC Act—which imposed no *statutory* fiduciary duty—as allowing an LLC's operating agreement to limit or eliminate managers' presumptive fiduciary duties imposed by common law and agency principles. 246 Ariz. at 532-34, 443 P.3d at 22-24. The court limited this holding to the LLC Act. 246 Ariz. at 532, 443 P.3d at 22.

In 2018, however, the Arizona legislature enacted the Arizona Limited Liability Company Act (the "ALLCA"), A.R.S. § 29-3101 *et seq.*, to replace the LLC Act. *Id.* Under the ALLCA, Arizona specifically imposes statutory fiduciary duties of loyalty and care on LLC managers. A.R.S. § 29-3409(I). These duties can be "expanded, limited, or eliminated by the operating agreement," but the interpretation of any modification will be considered under the duties' statutory definitions—rather than common law and agency principles. *Id.* § 29-3105(D)(1).

Appellants argue that the LLC Act, not the ALLCA, governs here. (Doc. 5 at 15). They claim that the ALLCA cannot apply because it "became applicable only to limited liability companies formed after September 1, 2020." (*Id.*). Not so. The ALLCA expressly states that "[o]n and after September 1, 2020, this chapter applies to *all* limited liability companies and foreign limited liability companies." A.R.S. § 29-3110(B) (emphasis added); *Sky Harbor*, 246 Ariz. at 532, 443 P.3d at 22 ("ALLCA will *first* apply only to LLCs formed on or after September 1, 2019, but will apply to *all* LLCs starting September 1, 2020." (emphasis added)). Thus, the ALLCA is the governing statutory regime here because Ghadimi's relevant conduct—turning to the MCA lenders—did not occur until

- 7 -

2021, after the ALLCA's September 1, 2020 effective date for all Arizona LLCs.[7] As Appellants admit, the ALLCA "specifically impose[s] fiduciary duties on LLC members and managers unless otherwise stated in an operating agreement" (Doc. 5 at 15), such that Ghadimi presumptively owed the statutory fiduciary duties of loyalty and care to SPG to the extent that they were not modified by the Operating Agreement.

### 2. The Operating Agreement Did Not Authorize Ghadimi's Conduct.

Appellants argue that Ghadimi's conduct was "consistent with the authority conferred upon him by the Operating Agreement" and that Ghadimi cannot be held liable for any breach of fiduciary duty for that conduct. (*Id.* at 17; *see also* Doc. 7-3 ¶ 6.5 (limiting manager liability for acts made "in good faith under any authority granted in th[e] [Operating] Agreement")). In support of this argument, Appellants aver that the text of the Operating Agreement "confer[s] broad authority on Ghadimi as the manager of the company." (Doc. 8 at 5). Appellants point to paragraph 6.1 of the Operating Agreement, which states, in part:

> The Manager . . . shall have authority, power and discretion to make all decisions and to perform all acts which the Manager shall deem to be reasonably required to accomplish the objectives of the Company . . . . The Manager shall have all the rights and powers as a manager as provided in the [LLC] Act and as otherwise provided by law, except to the extent such powers are *expressly limited by this [Operating] Agreement* . . . .

(Doc. 7-3 ¶ 6.1(a) (emphasis added)). Because the Operating Agreement lists only a few prohibited actions, which are not relevant here,[8] Appellants contend that Ghadimi's "broad, mostly unlimited authority" allowed him "to borrow money and invest it in the stock

---

[7] Although SPG is a manager-managed *professional* limited liability company (*see* Doc. 7-3 at 2), the ALLCA states that "[p]rofessional limited liability companies shall be governed by the laws applicable to other limited liability companies except insofar as the laws are limited or enlarged by or contrary to this article, in any of which events this article shall be controlling." A.R.S. § 29-4104. Thus, SPG is generally subject to the ALLCA.

[8] Appellants point to paragraph 6.3 of the Operating Agreement for the "short list of prohibited actions." The provision bars the manager from (1) "confessing a judgment against the Company, making an assignment for the benefit of the creditors of the Company, or filing a voluntary petition in the bankruptcy or appointing a receiver for the Company" or (2) "[a]ccepting additional Capital Contributions . . . or making distributions to the Members in any form other than cash." (Doc. 7-3 ¶ 6.3). Appellants correctly note that these prohibited actions are not relevant to the case at hand.

market . . . as he deemed . . . necessary and reasonable." (Doc. 8 at 6).

While the Operating Agreement does grant broad powers to the manager, it is not silent as to whether the manager has the authority to hold or invest company assets or funds. Paragraph 6.2 of the Operating Agreement, which grants the manager certain powers and authority to act on behalf of SPG, states, in part:

> [T]he Manager shall have the power and authority, on behalf of the Company:
> . . .
> (d) To hold and own any Company real estate and any other assets of the Company in the name of the Company;
> (e) To invest any *Company funds* temporarily in time deposits, short-term governmental obligations, commercial paper or other investments . . . .

(Doc. 7-3 ¶¶ 6.2(d)-(e) (emphasis added)). Reading these two provisions together, the Operating Agreement is clear: if Ghadimi, as manager, wanted to hold and subsequently invest any SPG funds, he should have done so in an account under SPG's name. To hold otherwise would render the above sections of paragraph 6.2 superfluous. *See Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 158 n.9, 854 P.2d 1134, 1144 n.9 (1993) ("[A] contract should be interpreted, if at all possible, in a way that does not render parts of it superfluous.").

Furthermore, Appellants' contention that paragraph 6.2 does not "limit the Manager's authority" but only "provides only examples of the Manager's broad authority" (Doc. 8 at 6), is unpersuasive. Under the principle of expressio unius, "the expression of one item implies the exclusion of others." *City of Surprise v. Ariz. Corp. Comm'n*, 246 Ariz. 206, 211, 437 P.3d 865, 870 (2019); *see also Voight v. Ott*, 86 Ariz. 128, 133-34, 341 P.2d 923, 926 (1959) (principle of expressio unius applies to contractual interpretation). Paragraph 6.2 specifies how the manager can exert his power and authority to hold and invest SPG funds—by placing the assets under the name of the company. Thus, Ghadimi was not authorized to place the assets in his own personal trading account.

By placing $3.65 million of SPG funds in his personal Ameritrade account, Ghadimi acted contrary to the Operating Agreement. Because his conduct was not authorized,

Ghadimi can be held liable for that conduct as a breach of his fiduciary duties to SPG.[9]

### B. The Bankruptcy Court Did Not Clearly Err in Finding a Breach of Fiduciary Duty.

Appellants next attack the Bankruptcy Court's holding that Ghadimi breached his fiduciary duties to SPG. Appellants argue that Ghadimi "acted honestly and with good faith consistent with his authority under the Operating Agreement under challenging and unique circumstances to save a valuable business operation before a sale." (Doc. 5 at 5). The Bankruptcy Court determined that Ghadimi breached his fiduciary duties based on four findings: (1) the transfer of $3.65 million in SPG funds to Ghadimi's Ameritrade account was "by definition, a personal benefit"; (2) Ghadimi deprived SPG of "all dominion and control of its own assets, as "there were no conditions attached to Ghadimi's receipt" of SPG funds; (3) the promissory note from Monterey Trust to SPG provided "no meaningful benefit" for SPG, given its zero-percent interest rate (in contrast with the triple-digit interest rates on the MCA loans); and (4) Defendants provided "no plausible explanation for the transfers," other than simply "not want[ing] to open a separate brokerage account for SPG." (Doc. 5-2 at 5-6).

The Bankruptcy Court's findings are sufficient for a determination that Ghadimi breached his fiduciary duties to SPG. Under the ALLCA, Ghadimi breached his duty of loyalty to "account to the company and hold as trustee for the company any property, profit or benefit derived by the manager to which the manager is not entitled." A.R.S. § 29-3409(J)(1). Ghadimi, as manager, was not entitled to hold $3.65 million of SPG funds in his personal account. Although Ghadimi was entitled to receive "Distributable Cash"[10]

---

[9] Appellants question whether imposing fiduciary duties on LLC managers "makes sense for a family-owned entity without third party members." (Doc. 5 at 17). The ALLCA does not contain "family-owned entity" or single-member-company exceptions to the statutory default rule of imposing fiduciary duties on LLC managers. Instead, it states plainly that "[a] manager of a manager-managed limited liability company owes to the *company* and the members the duties of loyalty and care . . . ." A.R.S. § 29-3409 (emphasis added). Appellants' policy argument thus finds no support in the law.

[10] The Operating Agreement defines "Distributable Cash" as "the amount of cash which the Manager deems available for distribution to the Member(s), taking into account all of the Company's debts, liabilities, and obligations, including amounts which the Manager deems necessary to place into reserves for obligations of the Company with respect to the Company's Business." (Doc. 7-3 ¶ 1.8).

under the Operating Agreement (Doc. 7-3 ¶¶ 1.8, 4.1), Appellants admit that Ghadimi "withdrew $3,650,000 *in addition to his usual withdrawal of profits*." (Doc. 5 at 13 (emphasis added)). Appellants do not advance any argument that the $3.65 million transfer of funds constituted a distribution under the Operating Agreement.[11] While Ghadimi may have had good intentions behind his attempt to mitigate SPG's triple-digit-interest-rate debt, that does not change the fact that Ghadimi was not entitled to hold those funds in the first place. By placing the funds in his personal account, without any conditions on usage, Ghadimi accrued a personal benefit, to SPG's detriment, that further deepened SPG's solvency crisis and worsened its ability to meet its payroll and creditor obligations. Ghadimi permanently deprived SPG of these funds, as he never returned them to the company. No reasonable finder of fact could determine that Ghadimi complied with his duty to "account to the company" by, essentially, gambling company funds away.

Accordingly, viewing the evidence in the light most favorable to Ghadimi, the Court is not left with a definite and firm conviction that the Bankruptcy Court erred in finding that Ghadimi breached his fiduciary duties owed to SPG. Thus, the grant of summary judgment on the issue was appropriate.

### C.   No Genuine Issues of Material Fact Remain.

Finally, in the alternative, Appellants argue that "there was a genuine issue of material fact as to [Ghadimi's] good faith and purposes for his action" that precludes granting summary judgment. (Doc. 5 at 21). They point to the issue as to whether Ghadimi intended to pay back the funds that he had transferred from SPG because he was "anticipating substantial funds from a sale" of SPG and Hospice to prospective buyers. (*Id.* at 20-21). This is not a "genuine" issue of material fact.

"An issue of material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Thomas v. Ponder*, 611 F.3d 1144, 1150

---

[11] And, even if Appellants attempted to categorize the transfer of funds as a distribution, such a distribution would likely be prohibited under the ALLCA, given SPG's inability to pay its debts. *See* A.R.S. § 29-3405(A)(1) ("A limited liability company may not make a distribution . . . if after the distribution . . . [t]he company would not be able to pay its debts as the debts become due in the ordinary course of the company's activities and affairs.").

(9th Cir. 2010) (internal quotation marks and citation omitted). Even if Ghadimi was under the impression that his companies would be purchased, that does not change the analysis as to whether he breached his fiduciary duty of loyalty to SPG. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) ("Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment." (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986))). It is not relevant whether Ghadimi intended to pay back the funds from the "expected sale" of his companies (Doc. 5 at 21)—any supposed intent to pay back the funds was already evinced from the promissory note that he executed on behalf of the Monterey Trust. (Doc. 7-1 at 2-3). His conduct, rather than his intent, was the crux of his violation of his fiduciary duty of loyalty. Because no genuine issues of material fact remain, summary judgment is proper. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## CONCLUSION

For the reasons set forth above, the Bankruptcy Court did not err in granting partial summary judgment to Appellee on the breach of fiduciary duty claim.

Accordingly,

**IT IS THEREFORE ORDERED** that the final decision of the Bankruptcy Court entering judgment of $3,650,000.00 against Appellants for breach of fiduciary duty is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of Court terminate this action and enter judgment accordingly.

Dated this 16th day of October, 2025.

_____
G. Murray Snow
Senior United States District Judge